OPINION
{¶ 1} Appellant Tammy Samples appeals the decision of the Jefferson County Common Pleas Court, Juvenile Division, which terminated her parental rights and granted permanent custody of four of her children to appellee Jefferson County Children Services Board. She claims that the court's decision was not supported by clear and convincing evidence because she complied with her case plan and the agency failed to make reasonable efforts to reunify.
 {¶ 2} This court finds that there is clear and convincing evidence that permanent custody is in the children's best interests and that the children cannot be placed with a parent within a reasonable time or should not be so placed. And, the juvenile court was not required to make a reasonable efforts finding in this case. As such, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 3} On March 28, 2003, appellant's four minor children were removed from her household due to deplorable housing conditions and allegations of abuse. At the time, the children's ages were ten, eight, six and five. Upon their removal, the children were "wild" and "emotionally frantic." The two oldest children had bedwetting problems, and the oldest defecated in her pants nearly every day. These problems and the behavioral issues gradually subsided but would flare up after visits or phone calls with appellant.
 {¶ 4} Testimony by a police officer established that the house had structural damage, the front door was dismantled, a front window was missing, debris was strewn about the yard, and a ladder was lying on the roof. (Tr. 58-60). As for the interior, he noted generally filthy conditions, extremely dirty furniture, scattered debris, walls that seemed to be caving in, old food in pots on the stove in which a colony of maggots was residing, roosters in the basement, animal feces on the floor, a lighter surrounded by multiple candles that had burned down close to the table, standing water in the basement thought to contain sewage, and evidence that appellant's mentally handicapped adult son was sleeping in that flooded basement in a bed raised by cement blocks. (Tr. 58-62).
 {¶ 5} There were also allegations that the children had been emotionally and physically abused by appellant's boyfriend, David Smalls. It is claimed that he required the children to finish eating before a timer sounded, and if they did not finish in time, he would hit them. The mother admitted the existence of the timed meals and stated that he only hit the back of their hands with a backscratcher one time, at which point she told him never to do so again.
 {¶ 6} The children also claimed if they vomited from the timed meals or otherwise, Smalls made them eat their vomit. If the children wet or soiled their underpants, they were forced to wear those underpants on their heads. Smalls made them stand against a wall for lengthy periods for punishment. It was also stated that he knocked the youngest unconscious and appellant had to revive the child with a wet washcloth.
 {¶ 7} Smalls locked three of the children in a dog cage in the basement for two hours. The children claimed that they heard their mother instruct him to put them in the cage. They also stated that their mother hits them with a belt.
 {¶ 8} As a result of these charges, Smalls pled guilty to two counts of third degree felony child endangering/abuse. He was sentenced to six months in prison, followed by one year of intensive probation and then four years of basic probation. He was ordered to have no contact with appellant or the victims.
 {¶ 9} Appellant pled guilty to four misdemeanor counts of child endangering. However, in her counseling, psychological evaluation and in meetings with CSB, she continually denied knowledge of the abuse and minimized the children's claims after disbelieving them. And, in telephone calls to her children while they were at her sister's house in South Carolina, she repeatedly attempted to coach them: "You know David [Smalls] didn't do anything to you. * * * Monica and Matthew [the people they lived with] * * * told you to say all that stuff." (Tr. 117).
 {¶ 10} Meanwhile, the children were adjudicated dependent and abused, at which time appellant consented to temporary custody. Besides CSB providing for the needs of the children, the case plan required appellant to attend parenting classes, receive counseling and submit to a psychological evaluation. The case plan prohibited appellant's oldest son from being left alone in a room with the children. The case plan also barred Smalls from being near the children. Appellant was instructed to no longer victimize the children and to accept responsibility for her role in the emotional and physical abuse of her children and learn ways to prevent it in the future.
 {¶ 11} A March 2004 psychological evaluation of appellant disclosed that she still claimed to be unaware of any abuse or neglect and that she did not accept any responsibility for their suffering. She had a medical history of bipolar disorder and post-traumatic stress disorder. She was taking medication for depression and anxiety. She was diagnosed with a severe personality disorder with narcissistic, passive-aggressive, dependence, self-defeating and borderline features.
 {¶ 12} The psychologist opined that she was likely to remain an inadequate parent for the foreseeable future as she defies efforts at rehabilitation. He concluded that it is not likely the children will ever be safe in her care or with those to whom she chooses to expose them. He also testified that she cannot and will not keep her children safe. (Tr. 40). He recommended termination of her parental rights. (Tr. 41).
 {¶ 13} During the evaluation, it was disclosed that appellant was sexually abused by her father, who is the father of her adult mentally handicapped son. Appellant witnessed this son at age thirteen having sexual contact with her oldest daughter, who was three years old at the time. She claimed to have reported this incident. At the time of the children's removal, this son (then twenty-two) was living with them.
 {¶ 14} Appellant was also physically abused by her father from whom she did not "escape" until she was nearly thirty years old. This abuse is said to have required multiple surgeries and caused a heart attack. She attempted suicide as a result.
 {¶ 15} She was also physically abused by her former husband, Jerry Samples, who is the father of the four removed children. He was convicted and imprisoned as a result of the last incident of abuse. However, she stayed with him for over seven years out of fear. There was evidence that he may have also abused the children during those years and that the family lived in deplorable housing conditions in South Carolina.
 {¶ 16} Based upon the results of the evaluation and her continued minimization of and failure to acknowledge the abuse, CSB decided to seek termination of appellant's rights. Hence, on April 13, 2004, CSB filed its motion for permanent custody.
 {¶ 17} The guardian ad litem (GAL) filed multiple reports. She too noted appellant's continued minimization of the abuse by Smalls and her denial of any involvement. The GAL noted appellant's claims that if any abuse occurred, she must not have been home. The GAL also opined that appellant minimized the prior sexual contact between appellant's mentally handicapped son and the oldest daughter.
 {¶ 18} Additionally, the former husband, Jerry Samples, had just been released from prison for abusing her and violated his parole by coming to Ohio. The GAL reported that appellant's current boyfriend rents a house to Smalls and that appellant arranged for her former husband to live with Smalls. Then, appellant's mentally handicapped son began living with Smalls and Jerry Samples as well. At a recent unannounced visit, appellant's former husband was found cooking for her at her house. And, just a week before the dispositional hearing, the foster mother saw appellant helping Smalls build a porch even though he was ordered to have no contact with her.
 {¶ 19} Upon submission of these GAL reports, the evidentiary hearing was conducted before a magistrate on September 16, 2004. The magistrate believed that appellant no longer had contact with Smalls and found it significant that she no longer lived in her friend's house with the deplorable conditions. The magistrate determined that the condition of the house was not the fault of appellant because she merely made an effort to flee an abusive husband by moving to Ohio at her friend's urging. (Yet, we note that her husband was imprisoned and she had been dating Smalls for over two years at the time of the move). The magistrate voiced that she was not satisfied that CSB made reasonable efforts to reunify. Thus, the magistrate continued the case for further hearing and decision. In the interim, the magistrate granted appellant unsupervised visitation every weekend from Friday after school until Monday when school starts.
 {¶ 20} CSB asked the juvenile court to set aside the magistrate's interim visitation order and return to the regular supervised visitation schedule. CSB noted that there was evidence that appellant was still in contact with Smalls. CSB also explained that the psychologist testified that appellant could not keep her children safe. Additionally, it was revealed that appellant told the foster mother to pack all of the children's clothing for the upcoming weekend visitation and that the foster mother was concerned that appellant may try to flee with the children.
 {¶ 21} On October 1, 2004, the juvenile court set aside the magistrate's interim order as per Juv.R. 40(C)(3)(b). Thus, the court vacated the order of unsupervised weekend visitation and reimposed the prior supervised visitation schedule.
 {¶ 22} On October 13, 2004, the magistrate held the continued hearing. At this hearing, appellant introduced a letter purporting to establish that she turned her former husband in for his parole violation of leaving the state of South Carolina. Not much else of substance occurred here.
 {¶ 23} We should note, however, that the magistrate criticized the juvenile judge for setting aside her interim visitation order. In fact, she opined that the setting aside of her visitation order and all other official dealings with appellant were influenced by appellant's statement regarding some public official after "the law came down upon her." (Tr. 7). This was a highly improper statement for a magistrate to make about a juvenile court's motives.
 {¶ 24} On October 14, 2004, the magistrate concluded that there was not clear and convincing evidence that it was in the best interests of the children to grant permanent custody to CSB. The magistrate thus ordered the children be returned to appellant.
 {¶ 25} The next day, CSB filed a motion for findings of fact and conclusions of law under Juv.R. 40(E)(2) and Civ.R. 52. CSB also filed a motion for a stay pending objections and resolution of the request for findings and conclusions.
 {¶ 26} On October 15, 2004, the juvenile court granted the motion for stay until a final decision on permanent custody was reached. During the stay, the court did permit weekend visitation from Friday until Sunday with CSB having protective supervision over the children, including the right to visit the mother's residence at any time.
 {¶ 27} However, on November 5, 2004, the court suspended its order allowing appellant weekend visitation with her children. Her case plan prohibited her from bringing the children around Smalls or having any type of contact with Smalls during her children's visitation. Yet, the children disclosed that on a recent weekend visitation, Smalls was at appellant's residence in violation of this important aspect of the case plan.
 {¶ 28} Prior to the next scheduled hearing, the GAL submitted an additional report on December 8, 2004. She noted that the case plan not only prohibited Smalls from having contact with the children during visits with appellant but also prohibited her from using any physical discipline on her children and barred her from leaving Jefferson County with the children.
 {¶ 29} The children revealed that their mother brought them to a worksite in Pennsylvania to work on a construction job with Smalls. They had contact with Smalls, who told them to stay in a room so they would not get hurt at the site. They remained in a room watching movies without supervision the entire day. Appellant told them not to tell anyone Smalls was there or she would go to jail.
 {¶ 30} The children further disclosed that their mother was planning to take them to a movie with Smalls during another weekend visit. When he arrived late, they all watched a movie at home, with the children sitting next to Smalls on the couch. Again, their mother asked them not to tell anyone Smalls had been at their home or she would go to jail.
 {¶ 31} During the visit, Smalls told one of the children the abuse that occurred in the past was Monica's fault as she was controlling him; Monica is the woman whom they moved in with when they came to the deplorably kept house. And, appellant told a different child that the abuse was Monica's fault. The children then revealed that their mother "popped them on the butt" during visits as a form of discipline.
 {¶ 32} The GAL explained that the youngest child was sent home from school for behavior problems after a weekend visit with his mother. The oldest child began having incontinence problems that had previously been resolved. The GAL concluded that the children would be in serious danger if returned to their mother's care even for weekend visits. She opined that appellant cannot and will not keep the abuser of the children away from them and that appellant does not believe he is a danger to them.
 {¶ 33} The attorneys were then ordered to submit proposed findings of fact and conclusions of law within a week of the court reporters issuance of the transcript of the magistrate's hearing. Proposed findings of fact and conclusions of law were submitted by the GAL and adopted by CSB in April 2005, but opposing findings and conclusions were not submitted by appellant until June 2005.
 {¶ 34} The juvenile court released its decision on August 5, 2005, terminating appellant's parental rights and granting permanent custody to CSB. The court adopted the findings and conclusions proposed by the GAL and CSB. The court found that although appellant complied with some aspects of the case plan such as submitting to a psychological evaluation, regularly attending counseling and completing parenting classes, she did not accept responsibility and she continued to minimize the abuse. The court's entry detailed all the facts presented at the hearing. The court concluded that permanent custody was in the best interests of the children as appellant has committed severe acts of abuse and neglect toward the children and failed to protect them from extreme incidents of physical abuse by her boyfriend. Appellant filed the within appeal.
 ASSIGNMENT OF ERROR {¶ 35} Appellant's sole assignment of error contends:
 {¶ 36} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED APPELLEE'S MOTION FOR PERMANENT CUSTODY."
 {¶ 37} Appellant argues that the juvenile court's decision was not supported by clear and convincing evidence. She claims that full compliance with the case plan requires reunification or the agency would be permitted to add subjective requirements to the statute. She also contends that the agency failed to meet its burden of establishing that reasonable efforts were made to reunify her with her children.
 PERMANENT CUSTODY UNDER R.C. 2151.414 {¶ 38} Pursuant to R.C. 2151.414(B)(1), in order to grant permanent custody, the court must determine by clear and convincing evidence that permanent custody was in the children'sbest interests and one of the following: (a) the children are not orphaned or abandoned and have not been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period and the children cannot be placed witheither of the child's parents within a reasonable time or shouldnot be placed with the child's parents; (b) the children are abandoned; (c) the children are orphaned; or (d) the children have been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period. (Emphasis added to portions applicable herein).
 {¶ 39} Here, the children are not alleged to be orphaned or abandoned. Although they had been in temporary custody for twelve of twenty-two months at the time of the hearing, the relevant date for use of this provision is the date the agency files the motion. See In re C.W., 104 Ohio St.3d 163, 2004-Ohio-6411, at ¶ 22-26 (the court cannot use the "12 of 22" provision if the agency files the motion prior to the expiration of twelve months from the statutory definition of temporary custody). Temporary custody is statutorily defined as beginning at the earlier of the date of adjudication or sixty days after removal. See id. See, also, R.C. 2151.414(B)(1), last ¶. Here, removal was on March 28, 2003. Sixty days from this date is May 27, 2003. The temporary custody adjudicatory hearing was not held until May 28, 2003, and the magistrate's order was not filed until June 9, 2003. The permanent custody motion was filed on April 13, 2004. Using any date, CSB's motion was filed prior to the expiration of twelve months. Thus, the "12 of 22" provision is inapplicable, and R.C.2151.414(B)(1)(a) is the only remaining alternative factor required for permanent custody in this case.
 {¶ 40} The question herein is thus whether a court could find by clear and convincing evidence that permanent custody would be in the best interests of the children and that the children cannot be placed with a parent within a reasonable time or should not be so placed. See id. The children's father did not involve himself in this case. As such, when speaking of placement with a parent, we are only speaking of appellant's situation.
 {¶ 41} Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence but less than proof beyond a reasonable doubt. State v.Schiebel (1990), 55 Ohio St.3d 71, 74. It produces in the mind of the fact-finder a firm belief or conviction as to the facts sought to be established. Id. In conducting our review, we do not substitute our judgment for that of the trier of fact if there is competent and credible evidence to clearly and convincingly establish the children's best interests. In re Brown, 7th Dist. No. 04CO59, 2005-Ohio-4374, at ¶ 50. If the evidence can be interpreted two opposing ways, either one of which is reasonable, we do not reverse merely because we may have ruled the other way. Id.
 {¶ 42} In determining the best interests of the child, R.C.2151.414(D) instructs the court to consider all relevant factors including, but not limited to: the interaction and interrelationship of the child with his family members and others; the child's wishes; the custodial history, including whether the child has been in the state's temporary custody for twelve or more months of twenty-two consecutive months; the child's need for a legally secure placement and whether this can be accomplished without an award of permanent custody; and the factors listed in R.C. 2151.414(E)(7) through (11).
 {¶ 43} Here, the children began interacting well together after adjusting to their removal. They were all in one foster home until their maternal aunt in South Carolina became a foster parent in order to take custody of them. (She had previously taken them in for the summer when appellant had medical problems.) The aunt desired the foster arrangement to be permanent until she was required to get surgery and realized that her lupus condition practically prohibited her from taking long-term care of the children. During the aunt's time with the children, the original foster parents visited them in South Carolina and kept in frequent contact.
 {¶ 44} After the aunt had to relinquish the children, two children returned to the original foster family and two went to another foster family because the original family had reached their limit. The families ensured the children maintained contact. And, the foster mother testified that she would like to adopt all four children in an open adoption whereby she would allow appellant contact with the children. The foster mother noted that she allowed such contact when she adopted her nineteen-year-old son ten years ago. She also explained that she has a good relationship with both appellant and the aunt, pointing out that she brought all four children and appellant to church the week before the hearing.
 {¶ 45} The children's interaction with their father was nonexistent throughout their time in agency care and prior to such time, while he was incarcerated for beating their mother. As for appellant, the children love her but are nervous around her. Their behavior becomes wild or immature after visits with her, unless also accompanied by the foster parents. The youngest was removed from school due to unusual behavior problems after a weekend with his mother. The oldest reverts to defecation in her pants after some visits with her mother.
 {¶ 46} The children cannot trust their mother to believe their accusations. They express simultaneous desires to live with their original foster family, their aunt and their mother if she receives help. Their interaction with Smalls, whom they used to call "Daddy" and whom still appears to be their mother's boyfriend, is fearful, violative of the case plan, and in fact illegal under the terms of his post-release control.
 {¶ 47} The children are in need of a legally secure placement. Due to appellant's minimization of their abuse, her refusal to acknowledge the abuse until trial, evidence that she tried to coach them out of their stories, and her continued relationship with the children's abuser, not to mention forcing the children to spend time in his immediate presence, one could determine with firm conviction that a lesser option is not available.
 {¶ 48} Contrary to her claims, the case plan was not wholly complied with where she failed to accept responsibility and continued to disbelieve her children to their faces even after Smalls felony convictions. In any event, claimed completion of the case plan does not require a finding that permanent custody is not in the children's best interests. The court's decision that permanent custody is in the children's best interests is supported by clear and convincing evidence.
 {¶ 49} We thus move to the next statutory consideration. In determining whether a child cannot be placed with either parent within a reasonable time period or should not be placed with the parents, the court shall consider all relevant evidence. R.C.2151.414(E). If the court finds that one or more of the factors listed in R.C. 2151.414(E) exist, then the court shall enter a finding that the child cannot be placed with either parent within a reasonable period or should not be placed with either parent. Some of these factors are as follows:
 {¶ 50} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 51} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *
 {¶ 52} "(6) The parent has been convicted of or pleaded guilty to an offense under [R.C. 2919.22(A), child endangering by parent who creates substantial risk to health or safety of child by violating duty or care, protection or support] * * * and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child. * * *
 {¶ 53} "(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 54} "(16) Any other factor the court considers relevant."
 {¶ 55} Appellant's arguments about completion of her case plan seem to relate to R.C. 2151.414(E)(1). However, utilization of that section is not required. The simplest section to apply here is (E)(6). Appellant pled guilty and was convicted of four violations of R.C. 2919.22(A) against the four children involved in this case.
 {¶ 56} Additionally, the court opined that she poses an ongoing danger to the children considering her refusal to acknowledge the danger Smalls and people like him pose to her children. The court also found that her failure to take responsibility also involves the abuse she inflicted herself. For instance, the court could reasonably believe that she told Smalls to put three of the children in the dog cage contaminated with rooster filth in a disgusting basement where they remained for approximately two hours.
 {¶ 57} Appellant continually refused to acknowledge the children's abuse, refused to take responsibility for the children's suffering and minimized any abuse that was acknowledged. Without her true acknowledgment, her counseling could not progress to a point where she could be trusted to ensure her children's safety. She was provided with supervised visitation where she was not particularly affectionate or responsive to the children. We also note that weekend visitation was provided through the court's stay order, but appellant then violated her case plan in multiple ways and demonstrated once and for all that she could not keep her children safe and could not keep them from their abuser whom they desperately feared.
 {¶ 58} The psychologist also opined that she poses an ongoing danger to the children. And, the court is within its discretion to believe this expert opinion. The court was in the best position to view the witnesses' (including appellant's) gestures, demeanor and voice inflections. Appellant portrayed behavior and characteristics that caused to arise in the fact-finder's mind a firm conviction that permanent custody would be in the children's best interests and that they could not be returned to her within a reasonable time or should not be due to her convictions and her present and future state of posing an ongoing danger. Pursuant to the foregoing analysis, we hold that R.C. 2151.414(B)'s two requirements for granting permanent custody were established by clear and convincing evidence.
 REASONABLE EFFORTS {¶ 59} As aforementioned, appellant also claims that CSB failed to engage in reasonable efforts to reunite her children with her. Pursuant to R.C. 2151.419(A)(1), there are some situations when the agency has the burden of proving that it made reasonable efforts to prevent continued removal or to reunify. However, this is not one of them. R.C. 2151.419(A)(1) specifies:
 {¶ 60} "at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home."
 {¶ 61} The hearing held herein was not held pursuant to anyof the sections listed above. Thus, R.C. 2151.419(A) and its reasonable efforts requirement are inapplicable.
 {¶ 62} Specifically, the only section listed in R.C.2151.419(A) that could even arguably be relevant is R.C.2151.353, which lists the alternative dispositions for a child who has just been adjudicated abused, neglected or dependent. Courts often assume that since permanent custody can be a final disposition of such a child, R.C. 2151.353 and thus 2151.419(A) apply when granting permanent custody. However, upon closer reading, the disposition in R.C. 2151.353 refers to that disposition made immediately after the adjudication, not upon a motion for permanent custody filed months after the adjudication decision and initial disposition were made. See R.C. 2151.353(A).
 {¶ 63} Upon the adjudication here, the initial disposition as referred to in R.C. 2151.353 was temporary custody under R.C.2151.353(A)(2). Thus, the reasonable efforts statute, R.C.2151.419(A), would have applied back when the children were adjudicated. Appellant consented to temporary custody at that time.
 {¶ 64} In fact, permanent custody cannot be sought as the disposition listed in R.C. 2151.353(A)(4) unless the complaint alleging abuse, neglect or dependency seeks permanent custody. R.C. 2151.353(B). This subpart makes further statements establishing the difference between a later permanent custody motion and an initial disposition upon adjudication. Id. Since the complaint here did not seek permanent custody, the hearing on permanent custody did not proceed under R.C. 2151.353.
 {¶ 65} Moreover, R.C. 2151.414, which is the statute requiring a finding of best interests and a finding that the child cannot or should be placed with a parent, specifically differentiates itself from R.C. 2151.353 as follows:
 {¶ 66} "The adjudication that the child is an abused, neglected, or dependent child and any dispositional order that has been issued in the case under section 2151.353 of the Revised Code pursuant to the adjudication shall not be readjudicated at the hearing and shall not be affected by a denial of the motion for permanent custody."
 {¶ 67} It thus becomes clear that the hearing in this case was unrelated to R.C. 2151.353. Rather, the hearing in this case was held under R.C. 2151.414 pursuant to a motion made underR.C. 2151.413(A), which provides:
 {¶ 68} "A public children services agency or private child placing agency that, pursuant to an order of disposition under division (A)(2) of section 2151.353 of the Revised Code or under any version of section 2151.353 of the Revised Code that existed prior to January 1, 1989, is granted temporary custody of a child who is not abandoned or orphaned may file a motion in the court that made the disposition of the child requesting permanent custody of the child."
 {¶ 69} There are thus two means by which an agency can obtain permanent custody: (1) by requesting it in the abuse, neglect or dependency complaint under R.C. 2151.353 or (2) by filing a motion under R.C. 2151.413 after obtaining temporary custody. Since the hearing at issue herein was not held pursuant to R.C.2151.353 or any of the other statutes listed, the reasonable efforts statute, R.C. 2151.419, is inapplicable.
 {¶ 70} Various appellate courts have agreed with this analysis. See, e.g., In re S.S., 10th Dist. No. 05AP204,2005-Ohio-4282 at ¶ 16-17 (because R.C. 2151.419 does not apply to R.C. 2151.413 or to hearings held pursuant to R.C. 2151.414, the reasonable efforts requirement of R.C. 2151.419(A) is inapposite to the facts and circumstances of this case); In reS.P., 12th Dist. No. CA2004-10-255, 2005-Ohio-1079, at ¶ 5; Inre Miller, 5th Dist. No. 04CA32, 2005-Ohio-856 at ¶ 29 (R.C.2151.419 does not apply to R.C. 2151.413 motions); In re A.C.,
12th Dist. No. CA2004-05-041, 2004-Ohio-5531 at ¶ 30 ("By its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414."); In re K., 8th Dist. 83410, 2004-Ohio-4629 at ¶ 21; In re CN, 8th Dist. 81813, 2003-Ohio-2048 at ¶ 37 (reasonable efforts statute inapplicable to motion made under R.C. 2151.413); In re Moore (Dec. 15, 1999), 9th Dist. No. 19217 (noting that R.C. 2151.35 referred to in R.C. 2151.414 is not a section listed as requiring reasonable efforts). See, also, In re Stillman, 155 Ohio App.3d 333,2003-Ohio-6228 at ¶ 58 (11th Dist.). Thus, there appears to be a trend in setting forth this holding.
 {¶ 71} On the other hand, some courts regularly apply the reasonable efforts requirement of R.C. 2151.419 to situations such as this. See, e.g., In re Wingo (2001),143 Ohio App.3d 652, 659, 660 (4th Dist.); In re Brown (1994),98 Ohio App.3d 337, 344 (3d Dist.). Many of these cases do not analyze the specific issue; rather, they seem to assume the reasonable efforts statute applies due to mention of permanent custody as a type of disposition upon adjudication and due to the agency's failure to raise the issue. But, see, In re Leitwein, 4th Dist. No. 03CA18, 2004-Ohio-1296, at ¶ 29, fn2 (acknowledging a conflict exists among appellate districts).
 {¶ 72} We also note that this court has applied R.C.2151.419's reasonable efforts requirement to permanent custody motions filed under statutes not listed in R.C. 2151.419. See Inre Bowers, 7th Dist. 04MA214, 2005-Ohio-4376 at ¶ 62 and In reElliott, 7th Dist. No. 03JE30, 2004-Ohio-388 at ¶ 39, citing Inre Starkey, 150 Ohio App.3d 612, 2002-Ohio-6892 at ¶ 12-14
(generally assuming the reasonable efforts statute applied, in the absence of an agency argument that it did not, but statutorily bypassing the reasonable efforts test due to abandonment); In re Brewer (Feb. 12, 1996), 7th Dist. No. 94B28 (where we first applied R.C. 2151.419 to a regular permanent custody motion, even though we noted that R.C. 2151.414 no longer contains within it a requirement that the trial court find the agency made good faith efforts to implement reunification). We point out that the agencies never argued that reasonable efforts findings were not required in those cases, and we thus did not delve into the matter. It thus appears that this court has never been directly presented with the existence of a conflict in the districts on the issue of whether findings on reasonable efforts are required for permanent custody motions.
 {¶ 73} The deceiving title of R.C. 2151.353 is likely part of the reason behind the statute's misapplication in typical permanent custody motions. It is easy to assume that R.C.2151.353 overlaps the other permanent custody statutes since permanent custody can eventually be a disposition after adjudication. However, upon reviewing the decisions of the Fifth, Eighth, Ninth, Tenth and Twelfth Districts, we agree that the reasonable efforts statute is not applicable in motions for permanent custody made under R.C. 2151.413 because none of the statutes listed in the reasonable efforts statute pertain to such motions. R.C. 2151.353, the only statute listed in the reasonable efforts statute that is arguably pertinent, deals with the disposition made immediately upon adjudication, whether temporary custody or permanent custody is sought in a complaint. It does not deal with a later disposition of permanent custody sought under an unrelated statute.
 {¶ 74} In final support for declaring the inapplicability of the reasonable efforts statute to permanent custody motions, the Supreme Court's failure to mention the requirement of a reasonable efforts finding in its permanent custody cases is telling. For example, the Supreme Court recently evaluated the requirements for granting permanent custody. In re C.W.,104 Ohio St.3d 163. The Court noted that the permanent custody motion was made under R.C. 2151.413. Id. at ¶ 8. The Court stated that R.C. 2151.414 sets forth the procedures the juvenile court must follow and the findings it must make before granting permanent custody. Id. at ¶ 9. Specifically, the Court explained that it must determine by clear and convincing evidence that permanent custody is in the child's best interest and that one of the four listed alternatives apply. Id. at ¶ 9-13. Notably, the Court made absolutely no mention of R.C. 2151.419 and did not add that the juvenile court must make a reasonable efforts finding before granting permanent custody.
 {¶ 75} For all of the foregoing reasons, we hereby hold that R.C. 2151.419(A)'s requirement of reasonable efforts to reunify is not applicable to orders granting permanent custody upon motions filed under R.C. 2151.413. The reasonable efforts statute, R.C. 2151.419(A), only applies to hearings held under certain listed statutes. For instance, hearings held under R.C.2151.353 are subject to the reasonable efforts requirement of R.C. 2151.419(A). However, those hearings deal with the disposition of temporary custody or permanent custody (initially sought in the abuse, neglect or dependency complaint) entered immediately after the adjudication of a child as abused, neglected or dependent. See R.C. 2151.353.
 {¶ 76} Permanent custody sought subsequent to adjudication in a separate motion made under R.C. 2151.413 is not subject to a hearing held under any of the statutes referred to in R.C.2151.419(A). Thus, R.C. 2151.419(A) does not apply to permanent custody sought under R.C. 2151.413 after adjudication and initial disposition.
 {¶ 77} To avoid confusion, we note that in some permanent custody cases filed under R.C. 2151.413, an evaluation of something akin to reasonable efforts may be required under R.C.2151.414(E). Pursuant to that division, "reasonable case planning and diligent efforts to assist parents to remedy the problems that initially caused [removal]" is one of the optional choices for determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with a parent. R.C. 2151.414(E)(1). However, this is unrelated to R.C.2151.419(A), which remains inapplicable to motions filed under R.C. 2151.413. And, there is no requirement in R.C. 2151.414(E) that the judge make specific findings as there is in R.C.2151.419.
 {¶ 78} Here, reference to reasonable case planning and diligent efforts is unnecessary because, as set forth above, the most obvious factor applicable and absolutely requiring a finding that placement cannot or should not occur is R.C. 2151.414(E)(6). That is, appellant was convicted of endangering these children under R.C. 2919.22(A).
 {¶ 79} In conclusion, appellant's argument regarding reasonable efforts is without merit because the reasonable efforts statute is inapplicable herein. Accordingly, the judgment of the trial court is hereby affirmed.
 {¶ 80} A separate entry shall be filed sua sponte certifying a conflict to the Supreme Court on the various districts' divergence on the applicability of the reasonable efforts statute. See Ohio Const. Art. IV, Sec. 3 (B)(4).
Donofrio, P.J., concurs.
Waite, J., concurs.