OPINION *Page 2 
{¶ 1} Appellant Beth Gibb appeals the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted permanent custody of three of her six children to Appellee Tuscarawas County Department of Job and Family Services ("TCDJFS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant is the mother of Jerrimie, Jason and Bryan Gordon, and Lakyla, Asia, and Alex Gibb, all minor children. Appellee TCDJFS has had numerous involvements with these children over the past decade, including concerns over sexual behavior between two of the siblings. As of September 2005, all six children were residing in the home of appellant and James Gibb, although the three oldest children were fathered by Thomas Gordon.[1] On September 27, 2005, all six children were taken into temporary custody by TCDJFS due to concerns over inappropriate supervision and unsanitary home conditions. At the adjudication hearing on November 23, 2005, appellant and James Gibb each stipulated to an amended complaint for dependency. Following a dispositional hearing, all six children were ordered to remain in the temporary custody of TCDJFS.
 {¶ 3} On August 3, 2006, TCDJFS filed a motion to modify prior dispositions. The agency therein requested that legal custody of the Gordon children (the three oldest) be granted to a paternal aunt and uncle, while permanent custody of the Gibb children (the three youngest) be granted to TCDJFS.
 {¶ 4} An evidentiary hearing was conducted on November, 17, 2006. By agreement of the parties, legal custody of the Gordon children was granted to the *Page 3 
paternal aunt and uncle. Following testimony as to the Gibb children's case, the trial court granted permanent custody to the agency, holding, inter alia:
 {¶ 5} "Based upon the facts presented at the evidentiary hearing and the recommendation of the Guardian ad Litem, the Court finds that Lakyla, Asia, and Alex Gibb cannot and should not be placed with either parent within a reasonable time. This evidence supports a finding that despite diligent, reasonable efforts and planning by the Tuscarawas County Job and Family Services to remedy the problems which caused removal of the children, both parents have failed continually and repeatedly for a period of six months or more to substantially remedy the conditions causing removal." Judgment Entry, November 22, 2006, at 3-4.
 {¶ 6} Appellant timely filed a notice of appeal. She herein raises the following sole Assignment of Error:
 {¶ 7} "I. THE TRIAL COURT ERRED IN FINDING CLEAR AND CONVINCING EVIDENCE THAT REASONABLE AND DILIGENT EFFORTS WERE EXPENDED TO REUNIFY DEPENDENT CHILDREN WITH THEIR BIOLOGICAL MOTHER."
 I. {¶ 8} In her sole Assignment of Error, appellant-mother challenges the trial court's decision on the issue of whether TCDJFS expended reasonable and diligent efforts to reunify the children with her.
 {¶ 9} R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent *Page 4 
custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 10} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 11} "(b) The child is abandoned.
 {¶ 12} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 13} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. * * *."
 {¶ 14} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[following the placement of the child outside the child's home and notwithstanding reasonable case planning anddiligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." See R.C. 2151.414(E)(1), emphasis added. *Page 5 
 {¶ 15} As an initial matter, we note appellant has utilized the phrase "reasonable and diligent efforts * * * to reunify" in the text of her assigned error. However, as indicated above, R.C. 2151.414(E)(1) actually refers to `reasonable case planning and diligent efforts by the agency[,]' within the context of the parent's failure to remedy the circumstances causing the child's removal from the home. See In reMiller, Licking App. No. 04 CA 32, 2005-Ohio-856, ¶ 22, quoting In reDanella, Summit App. No. 20663, 2002-Ohio-141, (additional citations omitted). Thus, "`R.C. 2151.414(E)(1) places no duty on the agency to prove that it exerted reasonable and diligent efforts toward reunification.'" Id. Accord In re S.S., Franklin App. No. 05AP-204,2005-Ohio-4282, ¶ 17. The "reasonable effort to reunify" theme is instead found in R.C. 2151.419(A); this Court has previously concluded that reunification findings are not required where, as here, the agency files a motion to modify temporary custody to permanent custody. SeeMiller, ¶ 28-29. See, also, In re Samples, Jefferson App. No. 05JE39,2006-Ohio-1056, ¶ 75. With these precedents in mind, and in the interest of justice, we will review the grant of permanent custody in this matter in light of the requirements under R.C. 2151.414(B)(1)(a) and R.C.2151.414(E)(1), supra, the sections upon which the trial court relied in the case sub judice.
 {¶ 16} The record in the case sub judice indicates Dr. Steve Dean of Community Mental Healthcare testified and issued written reports concerning his psychological evaluations of both appellant and James Gibb. His overall impression was that Gibb had cognitive limitations and was in the borderline range of intelligence. Tr. at 11. The testing suggested that Gibb would need support from others in order to parent effectively. Tr. at 11-12. Dr. Dean felt that Gibb had displayed some minimization of the *Page 6 
sexual abuse allegations that had been substantiated against his daughter, and that Gibb "really didn't understand the dynamics" of the sexual abuse. Tr. at 12. This created concerns about Gibb's ability to protect his daughter. Id. Dean also opined that Gibb tended to utilize an avoidance mechanism and was a person who tended to take "a passive approach to solving problems rather than somebody who actively works on his difficulties." Tr. at 15.
 {¶ 17} Dr. Dean also expressed that appellant, based on the evaluation, was similar to Mr. Gibb "in many ways." Tr. at 16. Appellant likewise was in the borderline range of intelligence, had verbal communication problems, and tended to be dependent. Id. Dean opined that appellant struggles with attending to life's normal responsibilities and would probably be "easily overwhelmed" by difficulty. Id. Like Gibb, she really didn't understand the dynamics of sexual abuse. Tr. at 17. Dean noted his primary concern was over her ability to keep her children safe and protected. Id. He also felt she needed "fairly intensive therapy" to address her dependency issues. Id. For both appellant and Gibb, treatment of their problems would need to be "long-term in nature." Tr. at 20. He did concede, however, that a slower-paced parenting program, like that operated by Goodwill in Stark County, would have been preferable. Tr. at 27.
 {¶ 18} The trial court also heard testimony from Melinda Caldwell, the coordinator of supervised visitation at Personal and Family Counseling Services. Although appellant and Mr. Gibb were generally consistent in attending the visits in this case, Caldwell described the visits as "chaotic," with difficulty implementing parenting skills. Tr. at 56. Caldwell described her attempts to go over problems at the post-visit discussions as follows: "Yes, * * * when we talk to [appellant and Gibb] they seem to understand, *Page 7 
evidenced by head shaking and, okay, and then they just don't implement them, so I don't know if it's that they don't, if they're lacking the knowledge or they're just unwilling to do so." Tr. at 57. Caldwell noted a lack of significant improvement over the course of one year, observing that follow-through was non-existent on the part of the parents. Tr. at 58, 60. She saw no benefit in stretching out her work with appellant and Gibb for six more months. Tr. at 62.
 {¶ 19} Timothy Wicks, a licensed professional clinical counselor with Personal and Family Counseling Services, also testified at the permanent custody hearing. He recalled that he had been seeing appellant for individual counseling since July 2006 (although her original counseling in June 2006 was delayed due to appellant missing several appointments). Wicks only addressed "some" of the issue of sexual abuse dynamics. Tr. at 92. Although appellant was "starting to make some progress," the concerns in Dr. Dean's evaluation had not been remediated, and Wick was "guarded" in any prognosis that appellant's issues would be remediated over time. Tr. at 86.
 {¶ 20} Finally, the court heard testimony from TCDJFS case manager Beth Bertini. She recalled the lengthy history the Gibb family has had with the agency, including eight investigations within eleven years, about three or four of which were formally opened as ongoing cases. Tr. at 106. These involvements included a similar pattern of concerns over inappropriate supervision, home conditions, and the children's medical care issues. Id. In the present case, Bertini noted that Mr. Gibb had completed his psychological evaluation, but had failed to follow through with the recommendations therein, particularly individual counseling. In regard to appellant, Bertini testified that the individual counseling should have started sooner, but appellant delayed it despite *Page 8 
numerous long discussions with Bertini regarding the case plan requirements. Tr. at 115-116. Bertini was unconvinced that appellant's individual counseling process had alleviated any of the agency's concerns. Tr. at 116. Although appellant had completed a parenting program, as she had in previous agency interventions, Bertini was left with "the same concerns based on the fact that she does improve but then goes back to * * * doing parenting the same, all (sic) ways she's been doing it." Tr. at 117. During the pendency of the present case, appellant moved out of the home she had shared with Gibb, and moved in with a male friend in a one-bedroom apartment. Tr. at 118. However, shortly before the permanent custody trial, appellant obtained a two-bedroom apartment. Tr. at 119. Bertini also expressed concern that appellant has frequently been unwilling to acknowledge the problems in this case and her role therein. Tr. at 121-122.
 {¶ 21} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. In addition, although appellant does not herein specifically challenge the court's "best interest" finding, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Mauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994), 95 Ohio App.3d 309, 316,642 N.E.2d 424. *Page 9 
 {¶ 22} Appellant patently criticizes the agency's efforts in the matter sub judice, labeling the case plan a "cookie cutter" approach which was not sufficiently individualized for her circumstances. Appellant's Brief at 16. We nonetheless must recognize that" * * * R.C. 2151.414(E)(1) does not mandate that a public children's services agency provide the best possible treatment regardless of cost." In the Matter of Beverly (March 31, 1994), Ross App. No. 93 CA 1992. quoting In the Matter of Queen (July 29, 1993), Pickaway App. Nos. 93CA11, 93CA12. Upon review of the record and the findings of fact and conclusions of law therein, we conclude the trial court's conclusion that the Gibb children cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, and the court's corresponding grant of permanent custody to TCDJFS, did not constitute an error or an abuse of discretion, and the decision was made in the consideration of the children's best interests.
 {¶ 23} Appellant's sole Assignment of Error is overruled.
 {¶ 24} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby affirmed.
Edwards, J., and Delaney, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.
Costs to appellant.
[1] Gordon has had no participation in the legal proceedings in this case. *Page 1