OPINION
{¶ 1} Appellant-Father, Charles B., appeals the judgments of the Allen County Court of Common Pleas, Juvenile Division, granting permanent custody of his three minor children to the Allen County Children Services Board (ACCSB). On appeal, Father contends that the trial court erred when it granted permanent custody of his three minor children to the ACCSB under R.C.2151.414(E)(1), (E)(4), (E)(14) and that the trial court erred when it found that the ACCSB made reasonable and good faith efforts at reunification. Finding that the trial court did not err when it granted permanent custody to the ACCSB and that the trial court did not err when it found that the ACCSB made reasonable and good faith efforts at reunification, we affirm the judgments of the trial court.
 {¶ 2} Mother, Kim K., is the natural mother of five children of which Father is the natural father of the three children at issue in this appeal. (Mother and Father hereinafter jointly referred to as "parents" or "Mother and Father") D.B., born July 11, 1990, is the oldest of the parents' three children. R.B., born October 30, 1991, is the parents' middle child. I.B., born September 22, 1993, is the youngest of the parents' three children. (D.B., R.B., and I.B. hereinafter referred to as "children") D.B., R.B., and I.B. all resided with Mother.
 {¶ 3} In October of 2002, the ACCSB filed a complaint alleging that I.B., a minor child, was a dependent and abused child. The complaint was filed because, among other things, I.B. had disclosed that she was sexually abused by a person that Mother allowed to reside with the family. On the same day, the ACCSB also filed a complaint alleging that R.B. was a dependent child.[1] The complaint was filed because, among other things, R.B.'s sister, I.B., had disclosed that she had been sexually abused. Additionally, in October of 2004, the magistrate ordered that both R.B. and I.B. be represented by a guardian ad litem.
 {¶ 4} In November of 2002, the ACCSB filed a case plan for both R.B. and I.B. The case plans, which both Mother and Father signed, listed the following family concerns:
1. Children have some developmental and behavioral problemswhich [Mother] has problems dealing with.
 2. Children's ages and ability to protect themselves.
 {¶ 5} To comply with the case plans, Mother was required to learn how to manage the children's inappropriate behavior as well as how to deal with their impairments. Additionally, Mother was to ensure that I.B. was enrolled and attending counseling to deal with her being sexually abused and that the other two children attended counseling on an as-needed basis. Mother was also required to work with the family aide on parent education and to ensure that the children were protected at all times. Further, Mother was required to provide a safe and stable home environment for the children. Specifically, Mother was to continue to comply with the Metropolitan Housing requirements and utilize services to maintain the utilities in her residence. Mother was also to ensure that the children's basic needs were being met physically, medically, and emotionally, and that the children were lice free to ensure that their educational requirements were being met. Additionally, Mother was required to ensure that inappropriate persons were not around the children, especially unsupervised.
 {¶ 6} On January 8, 2003, an adjudicatory hearing was held for both I.B. and R.B. At this hearing, the magistrate heard evidence to determine whether I.B. was a dependent and abused child and whether R.B. was a dependent child. In his entry, the magistrate found by clear and convincing evidence that I.B. was a dependent and abused child and that R.B. was a dependent child. On January 23, 2003, the juvenile court adopted the magistrate's findings in both cases and found I.B. to be dependent as defined in R.C. 2151.04 and abused as defined in R.C. 2151.031 and found R.B. to be dependent as defined in R.C. 2151.04. No one appealed the January 23, 2003 judgment entries.
 {¶ 7} On January 14, 2003, a dispositional hearing was held for both I.B. and R.B. At this hearing, the parties entered into an agreement whereupon the parties acknowledged that it would be in the best interests of I.B. and R.B. to be committed to the protective supervision of the ACCSB. On February 19, 2003, the trial court agreed and committed I.B. and R.B. to the protective supervision of the ACCSB. Additionally, the case plans were amended to include:
Michael Bump is not to be in, on or abut the premises at[Mother's residence] or any other place where the children arepresent; nor is he to have any contact, communication orassociation with the children; and parents are to take thosesteps necessary to enforce this case plan provision/order of theCourt.
(Feb. 19, 2003 Judgment Entries p. 2). No one appealed the February 19, 2003 judgment entries.
 {¶ 8} In February of 2003, amended case plans were filed. The amended case plans were signed by the parents and Michael Jones, the guardian ad litem for both I.B. and R.B.
 {¶ 9} In April of 2003, a semi-annual administrative review was conducted on the case plans. During this review, the review panel stated, "The children remain at high risk due to mother's engagement to Jerry Britton a registered sex offender and allowing inappropriate people around her children." Additionally, the review panel commented that Mr. Britton had been released from prison and is not to have contact with the children or be in Mother's home. Further, the review panel stated that protective supervision was necessary to continue because both I.B. and R.B. had an ongoing problem with head lice and have been sent home several times from school, and there were numerous reports that Mother was allowing Mr. Bump and Mr. Britton into her home when the children were there. Mother and Father both signed the review panel's report.
 {¶ 10} On May 1, 2003, the ACCSB filed a complaint alleging that D.B., a minor child, was a dependent and neglected child. The complaint alleged:
(1) The child is residing in a household in which a parent,guardian, custodian, or other member of the household committedan act that was the basis for an adjudication that a sibling ofthe child or any other child who resides in the household is anabused, neglected, or dependent child.
 (2) Because of the circumstances surrounding the abuse,neglect or dependency of the sibling or other child and the otherconditions in the household of the child, the child is in dangerof being abused or neglected by that parent, guardian, custodian,or member of the household. O.R.C. 2151.04(D); Whose parents,guardian, (Sic.) or custodian neglects the child or refuses toprovide the proper or necessary subsistence, education, medicalor surgical care or treatment, or other care necessary for thechild's health, morals or well being O.R.C. 2151.03(3).
Additionally, the complaint alleged that Mother's fiancé, Mr. Britton, a registered sex offender, had been found hiding in Mother's residence and Mr. Bump was also observed with the minor children, in violation of the case plan.
 {¶ 11} On the same date, a shelter care hearing was held for the children. After the hearing, the children were removed from Mother's home and placed in the shelter care of the ACCSB. Additionally, the ACCSB filed a motion to modify the disposition of I.B. and R.B. to give temporary custody of each child to the ACCSB.
 {¶ 12} On May 5, 2003, Mother filed a motion to modify the magistrate's order, granting temporary custody to the ACCSB, in order to obtain the custody of the children with the ACCSB's protective supervision.
 {¶ 13} On May 20, 2003, the ACCSB filed a case plan for the children. The May 2003 case plan was the original case plan for D.B. and the second amended case plan for I.B. and R.B. The May 2003 case plan listed the following family concerns:
1. Basic needs of the children
 2. Children's ages and ability to protect themselves
 3. Mental health counseling
 {¶ 14} To comply with the May 2003 case plan, Mother needed to provide all of the children's basic needs, protect the children at all times, and attend an assessment at the Family Resource Center. Specifically, Mother was required to make sure that the children's hair was free of lice, to utilize services to maintain utilities, and to make sure all that the basic needs of the children were met emotionally, physically, and medically. Mother was also required to keep Mr. Bump from being on, in, or about her residence as well as to make sure he had no contact with the children. Additionally, Mother was to make sure the children had appropriate supervision when she was not available and to not allow any registered sex offender in the presence of, about, or around the children, including Mr. Britton. Finally, Mother was to attend and follow all the recommendations of the counselor at the Family Resource Center. Additionally, the May 2003 case plan noted that court ordered removal was required of all the children from their Mother's house and that the children were placed in a certified foster home with the legal status of temporary custody. Further, the May 2003 case plan noted that the permanency goal was reunification with Mother. Both Mother and Father signed this case plan.
 {¶ 15} In June of 2003, the ACCSB filed an amended complaint alleging that D.B. was also an abused child because of an allegation that he had been a victim of sexual abuse.
 {¶ 16} On July 11, 2003 and August 25, 2003, a combined hearing was held on Mother's motions to modify the dispositions of the children and an adjudicatory and dispositional hearing for D.B. After the first day of the hearing, the dispositional hearing was adjourned and reassigned for August 25, 2003.
 {¶ 17} On August 11, 2003, Father moved for custody rights of D.B., because he believed that it was in D.B.'s best interest to have his natural father be his legal custodian.
 {¶ 18} On August 20, 2003, the parties entered into a stipulated judgment entry whereby the parties acknowledged that D.B. was dependent and abused as alleged in the amended complaint and agreed to delete the allegation of neglect. Additionally, the magistrate found that D.B. was dependent as defined in R.C.2151.04 and abused as defined in R.C. 2151.031(A). Further, the juvenile court approved the magistrate's decision and adopted it as the court's order. No one appealed from the August 20, 2003 judgment entry.
 {¶ 19} After the August 25, 2003 dispositional hearing, the magistrate made, among others, the following findings of fact with regards to D.B.'s disposition:
10.) The agency now asks by way of disposition that [D.B.] beplaced in its temporary custody. The father asks that the childinstead be placed in his custody. However, the evidence makesclear that his home is not presently appropriate for placement.His home is too small and he does not have adequate resources tofully provide for the child's needs. The home is extremelycluttered and crowded with the father's personal property. Thehome has on occasion been without full utility services. Thefather has had little contact with [D.B.] during the period ofagency involvement, and acknowledges very little visitation withthe child prior to that time as well. His sole income is SocialSecurity and S.S.I. totaling $427.00 per month. His landlord actsas his payee because, as related by the father, a doctor said hewas incompetent to handle money.
 11.) The [ACCSB] has made reasonable efforts to enable thechild to be returned to the care of the parent. These effortshave included emergency removal and alternate placement, casemanagement, general counseling, speech and hearing therapy,psychiatric services, individual counseling and family aidservices. These efforts have to date been unsuccessful becausethe mother has continued to place the children at risk and doesnot appear to have either the willingness or ability to assurethat the children are not placed at further risk of abuse.
 12.) It would be in the best interest of [D.B.] that he beplaced in the temporary custody of the [ACCSB].
(Magistrate's Decision Sept. 9, 2003 Case No. 03 JG 19709 p. 4). After the magistrate made those findings, he had D.B. placed in the temporary custody of the AACSB.
 {¶ 20} Additionally, the magistrate made, among others, the following findings in both I.B.'s and R.B.'s disposition:
10.) The agency now asks that the prior dispositional orderherein be modified to reflect that the child be placed in thetemporary custody of the [ACCSB]. The father does not oppose thatorder and testified that he believes it is in the child's bestinterests to remain in her current placement in foster care. TheGuardian Ad Litem also recommends that the child be placed in thetemporary custody of the [ACCSB].
 11.) The [ACCSB] has made reasonable efforts to enable thechild to be returned to the care of the parent. These effortshave included emergency removal and alternate placement, casemanagement, general counseling, and family aid services. Theseefforts have to date been unsuccessful because the mother hascontinued to place the children at risk and does not appear tohave either the willingness or ability to assure that thechildren are not placed at further risk of abuse.
 12.) It would be in the best interest of the minor child thatthe agency Motion for Modification be granted and that she now beplaced in the temporary custody of the [ACCSB].
(Magistrate's Decision Sept. 9, 2003 Case Nos. 02 JG 19190 02 JG 19190 p. 4).[2] After the magistrate made those findings, he had I.B. and R.B. placed in the temporary custody of the AACSB.
 {¶ 21} On October 9, 2003, the juvenile court, in all three cases, adopted the findings of fact contained in the magistrate's decisions, found the magistrate's decisions about conclusions of law and resolution of the issues to be appropriate, and adopted the magistrate's decisions as an order of the court. Additionally, in D.B.'s case, the juvenile court found that "reasonable efforts were made to prevent the removal of the child from the home and that efforts have been made to return the child home * * *." (Oct. 9, 2003 Judgment Entry Case No. 03 JG 19709). Further, the juvenile court, in all three cases, ordered that the children be placed in the temporary custody of the ACCSB, because it would be in the best interests of each child. Finally, based upon a court order, the May 2003 case plan was amended for the first time for D.B. case and third time for I.B. and R.B. cases to reflect that Mother was to complete a full psychological assessment. The October 2003 case plan also indicated that Mother, Father, and Mr. Jones, the Guardian Ad Litem for I.B. and R.B, participated and agreed with the plan.[3] No one appealed the October 9, 2003 judgment entries.
 {¶ 22} On October 17, 2003, the semi-annual review of the case plans was filed. D.B.'s and I.B.'s review, which Mother and Father signed, stated that there continued to be concerns with Mother admitting to the children's sexual abuse, that each child's foster parent currently provided all of his or her basic needs physically, medically, and emotionally, and, that placement with the foster parent needed to continue in order to allow Mother to continue with her counseling and to complete a mental health assessment. R.B.'s review, which Mother and Father signed, stated that there continued to be concerns with Mother admitting to the children's sexual abuse, that R.B.'s foster parent currently provided all of his basic needs physically, medically, and emotionally, and, that placement with the foster parent needed to continue in order to allow her to continue with individual counseling.
 {¶ 23} In March of 2004, Mother moved to have the October 2003 case plan amended to allow each child to have visitation in her home as soon as possible. In her motion, Mother stated that she wanted this change "because her therapist has recommended that [her] progress be moved ahead and that family counseling should begin as soon as practible. (Sic.)"
 {¶ 24} Additionally, in March of 2004, the ACCSB moved to extend the temporary custody of all three children. In its motion, the ACCSB stated that temporary custody should be extended because:
a) The progress which was made on the case plan of the childduring the prior period of temporary commitment or extendedperiod of temporary commitment is: * * * [M]other, and all thechildren * * * are attending counseling. [Mother] no longerallows sex offenders in her home, home conditions are adequate atthis time.
 b) The expectations of the family reunification or otherpermanent placement within this period of extension, if grantedare: The agency feels that with compliance to case plan goals andobjectives the reunification of the children with the parent ispossible.
 c) The following must take place during this period ofextension, if granted, to accomplish the goal of familyreunification or other permanent placement: Successful homevisits with all the children in the home of [Mother]. [Mother]needs to continue her counseling with Family Resource Center.
 d) Financial support for the child requires the parents tocooperate with the Allen County Children Support EnforcementAgency in order to determine their obligation thereof.[4]
 {¶ 25} In April of 2004, another semi-annual administrative review was completed on the children's case plans. The review panel noted that the children remained at high risk due to the inappropriate people Mother allowed to reside in her home. The review panel also noted that the current placement of each child was safe because each foster parent was providing all the basic needs of each child physically, medically, and emotionally, and the placement of each child needed to continue with his or her foster parent in order for Mother to recognize who is an inappropriate person allowed to reside or visit in her home. Additionally, the ACCSB recommended that the children remain in foster care for the next six months in order for Mother to realize that her children should be her first priority. Further, the review panel noted that Mother has maintained a residence, which has all working utilities, and is gainfully employed; that Mother believed she was capable of protecting the children, but continues to allow inappropriate persons to reside in her home; and, that Mother completed a mental health assessment and the counselor did not recommend further counseling. Finally, Father and Mother signed each of the semi-annual reviews.
 {¶ 26} In May of 2004, a hearing was held on both Mother's motion to amend the October 2003 case plan and the ACCSB's motion to extend the temporary custody order for the children. Subsequently, the magistrate's decisions provided the following findings:
12.) This hearing officer finds it would be in the bestinterest of the minor child that the existing order of temporarycustody placement with the [ACCSB] be extended for an additionalsix-month period.
 13.) This hearing officer finds that the case plan filed withthe Court on March 8, 2004 is sufficiently comprehensive to meetthe best interests of the minor child, and that the case planshould be approved as submitted subject to the followingamendment:
 A.) To reflect that visitation between the minor child andmother is to occur at agency offices and be directly andimmediately supervised by agency personnel.
 14.) The agency has made reasonable efforts to enable thechild to be returned to the care of the mother, however, theseefforts have to date been unsuccessful as mother continues toassociate with persons who place her and her children at risk ofharm.[5]
(May 4, 2004 Magistrate's Decision Case Nos. 02 JG 19190 02 JG 19191 p. 4). After making these findings of fact, the magistrate, in all three cases extended the temporary custody order of the ACCSB for six-months and denied Mother's motion to amend the October 2003 case plan. On June 1, 2004, the juvenile court adopted the magistrate's findings; ordered that the disposition to the ACCSB be continued for an additional six months, because it was in the children's best interest; amended the October 2003 case plan to reflect "the visitation between the minor child[ren] and mother is to occur at agency offices and be directly and immediately supervised by agency personnel";[6] and found that the ACCSB made reasonable efforts to finalize a permanency plan. No one appealed the June 1, 2004 judgment entries.
 {¶ 27} On June 23, 2004, the ACCSB moved for permanent custody of the children alleging it would be in each child's best interest. In its motions, the ACCSB stated three reasons that the children cannot be placed with the parents. First, the ACCSB stated, "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problems that initially caused the child to be placed outside the home, the parents have failed to continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home {(O.R.C. 2151.414(E)(1)} motherand father." (emphasis in original) (June 23, 2004 Motions for Permanent Custody). Next, the ACCSB stated, "The parents have demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child {(O.R.C. 2151.414(E)(4)}mother and father." (emphasis in original) (June 23, 2004 Motions for Permanent Custody). Finally, the ACCSB stated, "The parents for any reason, are unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional or sexual abuse or physical, emotional, or mental neglect {{O.R.C. 2151.414(E)(14)}mother and father." (emphasis in original) (June 23, 2004 Motions for Permanent Custody).
 {¶ 28} On October 4, 2004, Father moved for legal custody of the children, stating that it would be in the best interest of the children to have their natural father to be their legal custodian.
 {¶ 29} On October 8, 2004, the juvenile court consolidated the hearings of the children.
 {¶ 30} On November 2, 2004, Summer K., the sister and half-sister of the children, moved for legal custody of the children.
 {¶ 31} On November 10, 2004 and January 19, 2005, a hearing was held on the motions of Father, Summer K., and the ACCSB for the permanent legal custody of the children.
 {¶ 32} On August 11, 2005, the juvenile court made the following findings:
11.) Charles [B.], father of the child, has lived separate andapart from the mother since the agency's first involvement on May1, 2003. The home of the father is inadequate in that he has nothad adequate heat in the home since 2002, and the home iscluttered with lawn mowers and mattresses with various articlesstacked high on the beds and the father sleeps on the couch.
 The mother testified that when the father was with the girls,he would watch them dress.
 The father has been described as low functioning and incapableof providing proper care for the minor child and her siblings.The father, as was the mother, was advised that his son [D.B.]had sexually molested a female sibling and when he found [D.B.]in bed with the female sister, as was true with the mother, hedid nothing in terms of reporting or taking any action to insurethe safety of the female siblings.
 The father has never been a primary caretaker of the child anddoes not interact well with the child during visitations. * * *
 13.)[7] Upon consideration of those enumerated factorsset forth in the Ohio Revised Code Section 2151.414(E), the Courtfinds the existence of those conditions described in Ohio RevisedCode Section 2151.414(E)(1) as to both parents, in that followingthe placement of the child outside the child's home andnotwithstanding reasonable case planning and diligent efforts bythe agency to assist the parents to remedy the problems thatinitially caused the child to be placed outside the home, bothparents have failed continuously and repeatedly to substantiallyremedy the conditions causing the child to be placed outside thechild's home; as described in Ohio Revised Code Section2151.414(E)(4), both parents have demonstrated a lack ofcommitment toward the child by showing an unwillingness toprovide an adequate, permanent home for the child; and further,as described in Ohio Revised Code Section 2151.414(E)(14), bothparents have failed to prevent the child from suffering physical,emotional or sexual abuse. 14.)[8] The child cannot beplaced with either parent within a reasonable period of time andshould not be placed with either parent.
 The only relative seeking custody of the child was Summer[K.], who was married to Michael Bump, a registered sex offenderwith whom the biological mother had an association at the timethe child and siblings were removed from her home and who, asreported by [I.B.], sexually abused her. There are no suitablerelatives with whom the child can be placed.
 15.)[9] Upon consideration of all relevant factorsenumerated in Ohio Revised Code Section 2151.414(D), the Courtfinds that the child interacts well with the foster parents whoare now providing for the needs of the child and have been doingso since placement of the child in the shelter care of [ACCSB] onMay 1, 2003. The child cannot live with his female half-siblingsbecause of the high risk of repeated sexual abuse.[10] Thechild's need of a legally secure, permanent placement cannot beachieved without a grant of permanent custody to the agency.
 16.)[11] The Guardian Ad Litem has recommended that thechild be placed in the permanent custody of the [ACCSB] as samewould be in her[12] best interest.
 17.)[13] Having considered all relevant factorsenumerated in Ohio Revised Code Section 2151.414(D), grantingpermanent custody to the [ACCSB] is in the best interest of thechild.
(August 11, 2005 Judgment Entries pp. 6-7). After making these findings, the juvenile court granted permanent custody of the children to the ACCSB.
 {¶ 33} On August 23, 2005, Mother appealed the judgments of the juvenile court granting the ACCSB permanent custody of the three minor children. Subsequently, these cases were consolidated under App.R. 3(B) upon Mother's motion. In January of 2006, Mother withdrew her appeal.
 {¶ 34} On September 6, 2005, Father appealed the judgments of the juvenile court granting the ACCSB permanent custody of the three minor children, presenting the following assignments of error for our review:
 Assignment of Error No. I THE TRIAL COURT ERRORED (SIC.) WHEN GRANTING PERMANENT CUSTODYOF THE MINOR CHILDREN AS IT PERTAINS TO THE FATHER-APPELLANTBASED UPON O.R.C. SECTION 2151.414(E)(1).
 Assignment of Error No. II THE TRIAL COURT ERRORED (SIC.) WHEN GRANTING PERMANENT CUSTODYOF THE MINOR CHILDREN AS IT PERTAINS TO THE FATHER-APPELLANTBASED UPON O.R.C. SECTION 2151.414(E)(4).
 Assignment of Error No. III THE TRIAL COURT ERRORED (SIC.) WHEN GRANTING PERMANENT CUSTODYOF THE MINOR CHILDREN AS IT PERTAINS TO THE FATHER-APPELLANTBASED UPON O.R.C. SECTION 2151.414(E)(14).
 Assignment of Error No. IV THE TRIAL COURT ERRORED (SIC.) WHEN IT HELD THAT THE ALLENCOUNTY CHILDREN SERVICES BOARD MADE "REASONABLE AND GOOD FAITHEFFORTS" AT REUNIFICATION.
 {¶ 35} Due to the nature of Father's assignments of error, we will address his first three assignments of error together and then address his fourth assignment of error.
 {¶ 36} This Court's review of this issue begins by noting "[i]t is well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes (1997),79 Ohio St.3d 46, 48, citing In re Murray (1990),52 Ohio St.3d 155, 157. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes, 79 Ohio St.3d at 48 citing In re Perales
(1977), 52 Ohio St.2d 89, 97. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right' * * *." In reMurray, 52 Ohio St.3d at 157. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." Inre Hayes, 79 Ohio St.3d at 48 citing In re Smith (1991),77 Ohio App.3d 1, 16. Thus, it is within these constructs that we now examine these assignments of error.
 Assignments of Error No. I, II, III {¶ 37} In his first assignment of error, Father asserts that the trial court erred in granting permanent custody of the minor children to the ACCSB, based upon its finding under R.C.2151.414(E)(1). In his second assignment of error, Father asserts that the trial court erred in granting permanent custody of the minor children to the ACCSB, based upon its finding under R.C.2151.414(E)(4). In his third assignment of error, Father asserts that the trial court erred in granting permanent custody of the minor children to the ACCSB, based upon its finding under R.C.2151.414(E)(14).
 {¶ 38} First, we note that in In Re Murray (1990),52 Ohio St.3d 155, the Ohio Supreme Court held that judgment entries granting motions for temporary custody are final appealable orders. By failing to file a notice of appeal within thirty days of the pre-August 11, 2005 temporary custody orders, Father has waived any error that occurred with regard to those orders. See,In re Johnson, 9th App. Dist. No. 94 CA 2003, (Mar. 29, 1995);In re Shaeffer Children (1993), 85 Ohio App.3d 683. We will now address the issue of whether the trial court erred in granting permanent custody to the ACCSB.
 {¶ 39} Once a child has been placed in the temporary custody of a children's services agency, the agency is required to prepare and maintain a case plan for that child. R.C.2151.412(A)(2). Further, R.C. 2151.412(E)(1) states that "[a]ll parties, including the parents * * * are bound by the terms of the journalized case plan." One of the enumerated goals of a case plan for a child in the temporary custody of a children's services agency is "[t]o eliminate with all due speed the need for the out-of-home placement so that the child can safely return home." R.C. 2151.412(F)(1)(b). This goal is commonly referred to as reunification.
 {¶ 40} However, once an agency files a motion for permanent custody, the Revised Code requires that the trial court determine, by clear and convincing evidence, that a grant of permanent custody to the agency that has so moved is in the best interest of the child and that one of four enumerated factors applies. R.C. 2151.414(B)(1). Specifically, R.C. 2151.414(B)(1) provides:
Except as provided in division (B)(2) of this section, thecourt may grant permanent custody of a child to a movant if thecourt determines at the hearing held pursuant to division (A) ofthis section, by clear and convincing evidence, that it is in thebest interest of the child to grant permanent custody of thechild to the agency that filed the motion for permanent custodyand that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been inthe temporary custody of one or more public children servicesagencies or private child placing agencies for twelve or moremonths of a consecutive twenty-two month period ending on orafter March 18, 1999, and the child cannot be placed with eitherof the child's parents within a reasonable time or should not beplaced with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of thechild who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or morepublic children services agencies or private child placingagencies for twelve or more months of a consecutive twenty-twomonth period ending on or after March 18, 1999.
 For the purposes of division (B)(1) of this section, a childshall be considered to have entered the temporary custody of anagency on the earlier of the date the child is adjudicatedpursuant to section 2151.28 of the Revised Code or the date thatis sixty days after the removal of the child from home.
 {¶ 41} In determining a child's best interest, the trial court must consider the non-exclusive list of factors contained in R.C. 2151.414(D). With regard to D.B., the juvenile court stated:
Upon consideration of all relevant factors enumerated in OhioRevised Code Section 2151.414(D), the Court finds that the childinteracts well with the foster parents who are now providing forthe needs of the child and have been doing so since placement ofthe child in the shelter care of [ACCSB] on May 1, 2003. Thechild cannot live with his female half-siblings because of thehigh risk of repeated sexual abuse. The child's need of a legallysecure, permanent placement cannot be achieved without a grant ofpermanent custody to the agency.
(Aug. 11, 2005 Judgment Entry Case No. 03 JG 19709).
 {¶ 42} With regard to I.B. and R.B., the juvenile court stated:
Upon consideration of all relevant factors enumerated in OhioRevised Code Section 2151.414(D), the Court finds that the childinteracts well with the foster parents who are now providing forthe needs of the child and have been doing so since placement ofthe child in the shelter care of [ACCSB] on May 1, 2003; thechild has expressed that if returned to the home of the parents,she would not feel safe. The child's need of a legally secure,permanent placement cannot be achieved without a grant ofpermanent custody to the agency.
(Aug. 11, 2005 Judgment Entries Case Nos. 02 JG 19190 02 JG 19191)
 {¶ 43} Similarly, in determining whether a child cannot be placed with either parent within a reasonable time or should not be placed with the parents, the Revised Code requires that the court "consider all relevant evidence." R.C. 2151.414(E). This statute further states that "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent * * *," if it finds by clear and convincing evidence that one or more of sixteen enumerated factors exists. R.C. 2151.414(E).
 {¶ 44} The Supreme Court of Ohio has held that:
Clear and convincing evidence is that measure of degree ofproof which will produce in the mind of the trier of facts a firmbelief or conviction as to the allegations sought to beestablished. It is intermediate, being more than a merepreponderance, but not to the extent of such certainty as isrequired beyond a reasonable doubt as in criminal cases. It doesnot mean clear and unequivocal.
 Cross v. Ledford (1954), 161 Ohio St. 469, 477, citingMerrick v. Ditzler (1915), 91 Ohio St. 256 (emphasis in original). In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, 161 Ohio St. at 477 citing Ford v. Osborne
(1887), 45 Ohio St. 1, Cole v. McClure (1913), 88 Ohio St. 1, and Frate v. Rimenik (1926), 115 Ohio St. 11. Thus, we are required to determine whether the evidence was sufficient for the trial court to satisfy the requisite degree of proof.
 {¶ 45} Notably, Father does not contest whether granting of permanent custody of the children to ACCSB was in their best interests. Rather, he challenges the juvenile court's findings that the children could not be placed with him within a reasonable time or should not be placed with him. In making this determination, the juvenile court found that three of the factors enumerated in R.C. 2151.414(E) were present.
 {¶ 46} In his second assignment of error, Father disputes the juvenile court's finding that he demonstrated a lack of commitment toward each of the children by his unwillingness to provide an adequate, permanent home for his children. See R.C.2151.414(E)(4). This finding was supported by clear and convincing evidence.
 {¶ 47} R.C. 2151.414(E)(4) provides:
The parent has demonstrated a lack of commitment toward thechild by failing to regularly support, visit, or communicate withthe child when able to do so, or by other actions showing anunwillingness to provide an adequate permanent home for thechild
 {¶ 48} At the November 2004 hearing, Connie Rompella, a caseworker at the ACCSB, who worked on this case, testified that she went to Father's residence two times between May 2003 and December 2003. Ms. Rompella testified that the first time she went to Father's residence, she went with Michael Jones, the Guardian Ad Litem for I.B. and R.B. Ms. Rompella testified that during this visit she noted that Father lived in a second floor apartment with a kitchen, living room, and two bedrooms. Ms. Rompella further noted that Father's apartment was cluttered with lawnmowers in the kitchen, mattresses in the hallway, and "the beds [were] piled high with stuff." (Nov. 10, 2004 Transcript p. 146). Additionally, Ms. Rompella returned a few days later to take photographs of Father's apartment.[14]
 {¶ 49} Ms. Rompella also testified that Father did not have a steady job and that the Federal Government subsidized his income. On cross-examination, Ms. Rompella provided the following testimony:
Q: (By Father's counsel) — In the case plan, why are there nogoals or objectives for [Father]?
 A: The ultimate goal is reunification with [Mother] because ofCharlie's living conditions.
 Q: Once it became obvious that that wasn't going to be apossibility, why wasn't there an amendment to the case plansetting up goals and objectives for [Father]?
 A: [Father] was instructed by you at the one hearing to cleanup his apartment. Once the apartment was cleaned up, we wouldlook at placing possibly [D.B.] in his home. Every month I wouldask [Father], "[Father] have you cleaned up your apartment?". Hewould say, "No". He's waiting for this. He's moving here. Thelandlord has to do this. He hasn't done it as of September 20thof this year.
(Nov. 10, 2004 Tr. p. 194). Additionally, Ms. Rompella testified that the family aid gave and offered to help Father fill out applications for low income housing so he could move into appropriate housing, but Father never completed these forms.
 {¶ 50} At the hearing, which was continued to January of 2005, Michael Jones, the Guardian Ad Litem for R.B. and I.B., testified that on December 28, 2004, he and one of the ACCSB's caseworkers, Brent Bunky, went to Father's residence on an unannounced visit. Mr. Jones testified that Father indicated to him that there had been a gas leak, which did not allow Father to heat his home; however, Mr. Jones noted that Father had been using his stove to heat his residence. Mr. Jones also testified that during this December 2004 visit, Father had informed him that if Father was given permanent custody of the children that his two daughters would share a room, his son would have his own bedroom, and Father would sleep in the living room on a couch. Mr. Jones continued that Father had also informed him that he would place a lock on his daughters' door in order to protect them from potential harm from D.B.
 {¶ 51} Additionally, Mr. Jones testified that Father did not have sufficient income and financial resources to provide for the children, and that Father's residence was not large enough for the children. Further, Mr. Jones testified that during his December 2004 visit, he noticed a malnourished dog in Father's residence, which made him question the children's well being if Father was granted permanent custody.
 {¶ 52} On cross-examination, Mr. Jones testified that Father was initially considered as a placement for the minor children. Mr. Jones continued that since Father's house contained several items including lawnmowers in the kitchen, he believed that Father's residence was an inappropriate place for the children. Mr. Jones also noted, "It wasn't until really recently that [Father] has taken the initiative to get that cleaned up. When we went back to the home as I've previously described, I still don't think his home is an appropriate environment for the children." (January 19, 2005 Tr. p. 23).
 {¶ 53} At the January 19, 2005 hearing, Cindy Morman of the ACCSB, who was the family's family aide, testified that Father's housing was an issue. Ms. Morman testified that she gave Father a Metropolitan Housing application as well as Income Based Housing Applications, but she was unsure as to whether Father completed these applications. Additionally, Ms. Morman testified that she did not know if Father had adequate resources to provide for the children and that the condition of his residence continued to be a problem.
 {¶ 54} Finally, at the January 19, 2005 hearing, Father testified that there was a gas line problem in the apartment directly below his and that his gas had been shut off since 2002; however, Father noted that he used his stove to adequately heat his residence. Father also testified that he would obtain food stamps and do a little bit of work on the side to care for the children. Additionally, Father admitted that he did receive the applications from Ms. Morman, but he had not had a chance to get around to them.
 {¶ 55} Accordingly, the juvenile court's finding that the factors enumerated in R.C. 2151.414(E)(4) were present was supported by clear and convincing evidence. Therefore, we overrule Father's second assignment of error.
 {¶ 56} Our resolution of Father's second assignment of error renders his first and third assignments of error moot and we decline to address them. App.R. 12(A)(1)(c).
 Assignment of Error No. IV {¶ 57} In his fourth assignment of error, Father argues that the juvenile court erred when it held that the ACCSB made "reasonable and good faith efforts" at reunification. Specifically, Father contends that since he was rarely mentioned in the case plan and was not considered to be a possible placement for the children, the ACCSB did not make a reasonable and good faith effort at reunification.
 {¶ 58} Here, Father argues that the trial court erred when it held that the ACCSB made "reasonable and good faith efforts" at reunification with him. In his brief, Father does not provide any specific reason why the trial court needed to make a finding that the ACCSB made a "reasonable and good faith effort" to reunify the children with him. Nevertheless, we recognize two different instances were the Revised Code provides that reasonable efforts should be provided. The first instance can be found in R.C.2151.414(E)(1), which provides, in pertinent part:
Following the placement of the child outside the child's homeand notwithstanding reasonable case planning and diligentefforts by the agency to assist the parents to remedy theproblems that initially caused the child to be placed outside thehome, the parent has failed continuously and repeatedly tosubstantially remedy the conditions causing the child to beplaced outside the child's home.
(Emphasis added).
 {¶ 59} While we recognize that the ACCSB is required to perform reasonable case planning and provide diligent efforts under R.C. 2151.414(E)(1), our decision in Father's second assignment of error would render this assignment of error moot. Nevertheless, we will also consider the second instance, under R.C. 2151.419(A)(1), where an agency needs to provide reasonable efforts.
 {¶ 60} R.C. 2151.419 imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home. In re Brown (1994), 98 Ohio App.3d 337, 344. The agency bears the burden of showing that it made reasonable efforts. R.C. 2151.419(A)(1). "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." In re Evans (Oct. 30, 2001), 3d Dist. No. 1-01-75, 2001-Ohio-2302. To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification. Id. Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan. Id. Nevertheless, the issue is not whether there was anything more that ACCSB could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances.
 {¶ 61} Pursuant to R.C. 2151.419(A)(1), there are some situations when an agency has the burden of proving that it made reasonable efforts to prevent continued removal or to reunify. However, the case sub judice is not one of them. R.C.2151.419(A)(1) specifies:
at any hearing held pursuant to section 2151.28, division (E)of section 2151.31, or section 2151.314, 2151.33, or 2151.353 ofthe Revised Code at which the court removes a child from thechild's home or continues the removal of a child from the child'shome, the court shall determine whether the public childrenservices agency or private child placing agency that filed thecomplaint in the case, removed the child from home, has custodyof the child, or will be given custody of the child has madereasonable efforts to prevent the removal of the child from thechild's home, to eliminate the continued removal of the childfrom the child's home, or to make it possible for the child toreturn safely home. The agency shall have the burden of provingthat it has made those reasonable efforts. If the agency removedthe child from home during an emergency in which the child couldnot safely remain at home and the agency did not have priorcontact with the child, the court is not prohibited, solelybecause the agency did not make reasonable efforts during theemergency to prevent the removal of the child, from determiningthat the agency made those reasonable efforts. In determiningwhether reasonable efforts were made, the child's health andsafety shall be paramount.
 {¶ 62} The hearing held herein was not held pursuant to any of the sections listed above. Thus, R.C. 2151.419(A) and its reasonable efforts requirement are inapplicable.
 {¶ 63} In the case sub judice, the hearing was held under R.C. 2151.414 pursuant to a motion made under R.C. 2151.413(A), which provides:
A public children services agency or private child placingagency that, pursuant to an order of disposition under division(A)(2) of section 2151.353 of the Revised Code or under anyversion of section 2151.353 of the Revised Code that existedprior to January 1, 1989, is granted temporary custody of a childwho is not abandoned or orphaned may file a motion in the courtthat made the disposition of the child requesting permanentcustody of the child.
 {¶ 64} "There are * * * two means by which an agency can obtain permanent custody: (1) by requesting it in the abuse, neglect or dependency complaint under R.C. 2151.353 or (2) by filing a motion under R.C. 2151.413 after obtaining temporary custody." In re Samples, 7th Dist. No. 05 JE 39,2006-Ohio-1056, at ¶ 69. Since the hearing at issue in this case was held pursuant to a motion filed under R.C. 2151.413, the reasonable efforts statute, R.C. 2151.419 is inapplicable. SeeIn re Samples, 2006-Ohio-1056 at ¶ 75 ("[W]e hereby hold that R.C. 2151.419(A)'s requirement of reasonable efforts to reunify is not applicable to orders granting permanent custody upon motions filed under R.C. 2151.413."); In re S.S., 10th Dist. No. 05AP-204, 2005-Ohio-4282 at ¶ 16-17 ("[B]ecause R.C. 2151.419
does not apply to R.C. 2151.413 or to hearings held pursuant to R.C. 2151.414, the `reasonable efforts' requirement of R.C.2151.419(A) is inapposite to the facts and circumstances of this case"); In re A.C., 12 Dist. No. CA2004-05-041, 2004-Ohio-5531
at ¶ 30 ("By its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.")
 {¶ 65} Accordingly, Father's fourth assignment of error is overruled.
 {¶ 66} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments Affirmed.
 Bryant, P.J. and Shaw, J., concur.
[1] We note that a similar complaint was also filed alleging that D.B. was a dependent child, but this complaint was later dismissed.
[2] Both I.B.'s and R.B.'s magistrate's decision contain the same language.
[3] We note that both Mother and Father signed the October 2003 case plan for the children. We also note that Mr. Jones, the Guardian Ad Litem for I.B. and R.B, signed I.B.'s and R.B.'s October 2003 case plan. Mr. Chamberlain signed D.B.'s October 2003 case plan, but Mr. Jones' name was included in Part II.A.(ii), which listed the participants in the October 2003 case plan.
[4] This language is the same in the motion to extend temporary custody for each of the children.
[5] In the magistrate findings for D.B., section 14 states: "The agency has made reasonable efforts to enable the child to be returned to the care of the mother, however, these efforts have to date been unsuccessful as mother continues to associate with persons who place her and her children at risk of harm, and this child continues to experience relapse behaviors." (May 4, 2004 Magistrate's Decision Case No. 03 JG 19709 p. 4).
[6] The juvenile court amended the October 2003 case plan for each of the children.
[7] This finding is enumerated number 12 on the judgment entry for I.B. and R.B.
[8] This finding is enumerated number 13 on the judgment entry for I.B. and R.B.
[9] This finding is enumerated number 14 on the judgment entry for I.B. and R.B.
[10] In I.B.'s and R.B.'s judgment entry, this sentence reads, "the child has expressed that if returned to the home of the parents, she would not feel safe." (August 11, 2005 Judgment Entry p. 6).
[11] This finding is enumerated number 15 on the judgment entry for I.B. and R.B.
[12] We note that in D.B.'s judgment entry, the juvenile court notes that it would be in "her" best interest instead of "his" best interest. This appears to be a typographical error and does not affect our decision in this case.
[13] This finding is enumerated number 16 on the judgment entry for I.B. and R.B.
[14] We note that no photographs were included in the record for our review.